UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARCEL WALKER,

                Plaintiff,

           -v.-

EVERETT L. JAMES and M&S TRANSPORT INC.,

               Defendants.

23 Civ. 7895 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    On September 7, 2023, Defendants Everett L. James and M&S Transport Inc. removed this personal injury action from New York State Supreme Court, Bronx County ("New York Supreme Court"). *See Walker* v. *James,* Index No. 815991/2022E (N.Y. Sup. Ct., Bronx Cnty.) (the "Underlying Action"). Plaintiff Marcel Walker now moves, pursuant to 28 U.S.C. § 1447(c), to remand this action back to New York Supreme Court. In particular, Plaintiff maintains that Defendants were untimely in their filing of a notice of removal under 28 U.S.C. § 1446(b)(1) and (3), because Defendants failed to remove the case within 30 days of receiving Plaintiff's Request for Preliminary Conference (the "RPC"), filed in the Underlying Action on June 9, 2023; in the RPC, Plaintiff notified Defendants that they were appearing in an action "that seeks an amount which exceeds the jurisdictional limits of lower courts in excess of seventy-five thousand dollars." (*See* Dkt. #7-5 (RPC)). As detailed in the remainder of this Opinion, the Court agrees with Plaintiff that Defendants were in fact on notice of the removability of the case, based on the information contained in the RPC, and were thus untimely in removing it. Accordingly, the

Court grants Plaintiff's motion and remands this action back to New York Supreme Court.

### BACKGROUND[1]

This action began on October 27, 2022, when Plaintiff filed a Verified Complaint in New York Supreme Court, pressing various counts of negligence and vicarious liability arising under New York law in connection with a motor vehicle accident allegedly caused by Defendants. (*See generally* Second Notice of Removal, Ex. B (Complaint)). In the Complaint, Plaintiff, who allegedly suffered serious injuries in the accident, represented that he was seeking "damages in an amount that exceeds the jurisdictional limits of the lower Courts of competent jurisdiction." (*Id.* ¶ 56).

On January 13, 2023, Defendants first removed the action to the United States District Court for the Southern District of New York. (*See* Dkt. #7-2 (the "First Notice of Removal")). In their First Notice of Removal, Defendants

---

[1]    The facts stated herein are drawn from the facts set forth in Defendants' Second Notice of Removal (Dkt. #1) and Plaintiff's Verified Complaint appended thereto, the facts in which pleading the Court treats as true for the purposes of this motion. *See Fed. Ins. Co.* v. *Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 391 (S.D.N.Y. 2006) ("[On] a motion to remand, the district court accepts as true all relevant allegations contained in the complaint and construes factual ambiguities in favor of the plaintiff." (citations omitted)). Where relevant, the Court also refers to filings in the Underlying Action, which documents are appended to the parties' motion papers. (*See* Dkt. #7 (Declaration of Kevin S. Klein in Support of Motion to Remand ("Klein Decl."), 9 (Declaration of Atasia R. Richardson in Opposition of Plaintiff's Motion to Remand ("Richardson Decl.")). *See UBS Sec. LLC* v. *Dondero*, — F. Supp. 3d —, No. 23 Civ. 1965 (KPF), 2023 WL 8472322, at *1 n.2 (S.D.N.Y. Dec. 7, 2023) (finding that courts may consider "material outside of the pleadings" on a motion to remand (citing *United Food & Com. Workers Union, Loc. 919, AFL-CIO* v. *CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 305 (2d Cir. 1994))); *accord Romano* v. *Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010).

For ease of reference, the Court refers to Plaintiff's Memorandum of Law in Support of His Motion for Remand as "Pl. Br." (Dkt. #6); to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Remand as "Def. Opp." (Dkt. #10); and finally to Plaintiff's Affirmation in Reply as "Pl. Reply" (Dkt. #12).

maintained that jurisdiction was proper in this District pursuant to 28 U.S.C. § 1332(a), inasmuch as there was complete diversity of citizenship among the parties and "the amount in controversy in this suit is, upon information and belief, not limited to an amount equal to or less than the sum of $75,000." (*Id.*). That action was assigned to United States District Judge Jennifer H. Rearden, who issued an Order to Show Cause on March 20, 2023, directing "Defendants to show cause why the case should not be remanded to the Supreme Court of New York, Bronx County, on the basis that the conclusory allegations of Plaintiff's alleged injuries and economic loss ... did not sufficiently allege the amount in controversy exceeding the jurisdictional amount." *See Walker* v. *James*, No. 23 Civ. 260 (JHR), 2023 WL 3766311, at *1 (S.D.N.Y. June 1, 2023). And on June 1, 2023, after finding that Defendants were unduly speculative in asserting that the damages attributable to Plaintiff's alleged injuries, absent substantiating medical records, were likely to satisfy the jurisdictional amount, Judge Rearden remanded the case to New York Supreme Court for further proceedings. *Id.*

Following Judge Rearden's remand of the case, on June 9, 2023, Plaintiff served Defendants with a Request for Preliminary Conference in the Underlying Action. (*See* Dkt. #7-5 (RPC)). As its name suggests, the RPC expressed Plaintiff's desire for a preliminary conference in the matter and, important to the instant motion, provided "[t]he names, address and telephone numbers of all attorneys appearing in the action that seeks an amount which exceeds the

3

jurisdictional limits of lower courts in excess of seventy-five thousand dollars." (*Id.*).

Discovery ensued, and on June 23, 2023, Defendants served Plaintiff's counsel with a request for a supplemental demand pursuant to the New York Civil Practice Law and Rules ("C.P.L.R.") § 3017(c), which required Plaintiff to "set[] forth the total damages to which [he] deem[s] himself entitled." (*See* Second Notice of Removal ¶ 6 (quoting C.P.L.R. § 3017(c)). Plaintiff responded to Defendants' demand on August 16, 2023, with his position that: "Plaintiff is entitled to $1,000,000 or an amount in excess of that sum deemed fair and equitable by a jury at the time of trial." (*See id.*; *see also id.*, Ex. G). On September 7, 2023, Defendants again removed the action to this District, at which point it was assigned to the undersigned. (*See* Dkt. #1; September 7, 2023 Minute Entry). In the Second Notice of Removal, Defendants once again represented that jurisdiction was appropriate, citing the diversity between the parties and an amount in controversy that satisfied the requirements of 28 U.S.C. § 1332(a), and further represented that removal was timely, as the action "was removed within 30 days of the receipt of Plaintiff's demand, which was August 16, 2023." (Second Notice of Removal ¶ 11).

On October 4, 2023, Plaintiff filed a motion to remand the action to New York Supreme Court, maintaining that removal was not timely, as Defendants had filed their Notice of Removal more than 30 days following Plaintiff's June 9, 2023 service of the RPC, which document represented that the action "seeks an amount which exceeds the jurisdictional limits of lower courts in excess of

4

seventy-five thousand dollars." (RPC). On November 6, 2023, Defendants filed their memorandum of law in opposition to the motion to remand, arguing that the case had in fact been timely removed following Defendants' receipt of Plaintiff's C.P.L.R. § 3017(c) disclosure, and, conversely, that the RPC was insufficient to trigger the 30-day timeline set forth in 28 U.S.C. § 1446(b). (Dkt. #9-10). On November 20, 2023, Plaintiff filed his reply in further support of the motion to remand. (Dkt. #12).

## DISCUSSION

**A.  Applicable Law**

"[F]ederal courts are courts of limited jurisdiction and, as such, lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Purdue Pharma L.P.* v. *Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation marks omitted). "Congress has granted district courts original jurisdiction over cases in which there is a federal question, *see* 28 U.S.C. § 1331, and certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met, *see* 28 U.S.C. § 1332." *Id.*.

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Thus, a "state-court defendant may remove a civil action to federal court if the action could have been filed in federal court in the first place." *Solomon* v. *St. Joseph Hosp.*, 62 F.4th 54, 60 (2d Cir. 2023); *see also Gibbons* v. *Bristol-Myers Squibb Co.*, 919 F.3d 699, 704 (2d Cir. 2019)

("Section 1441 permits removal on the basis of either federal question jurisdiction or diversity of citizenship."). As a general matter, a party has 30 days to remove an action upon receipt of the initial pleading in a state court action. *See* 28 U.S.C. § 1446(b)(1) (requiring that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant … of a copy of the initial pleading setting forth the claim for relief upon which such action is based"). Where the case stated by the initial pleading is not removable, for lack of a necessary jurisdictional element or otherwise, the 30-day removal clock does not commence until the removing party receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(4).

Once an action has been removed, 28 U.S.C. § 1447(c) permits remand to state court on the basis of any defect in removal procedure or because the district court lacks subject matter jurisdiction. *See Frontier Ins. Co.* v. *MTN Owner Tr.*, 111 F. Supp. 2d 376, 379 (S.D.N.Y. 2000); *see also* 28 U.S.C. § 1447(c) (further requiring that a plaintiff challenging a removal "on the basis of any defect other than lack of subject matter jurisdiction" must file a motion to remand "within 30 days after the filing of the notice of removal"). On a motion to remand, "the defendant bears the burden of demonstrating the propriety of removal." *Cal. Pub. Emps.' Ret. Sys.* v. *WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004) (internal quotation marks and citation omitted); *see also Tantaros* v. *Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021) ("The

6

removing defendant has the burden of establishing federal jurisdiction."). The removal statutes are construed restrictively, and doubts regarding the viability of removal are resolved in favor of remanding the case to state court. *See Shamrock Oil & Gas Corp.* v. *Sheets*, 313 U.S. 100, 108-09 (1941); *see also Purdue Pharma LP*, 704 F.3d at 213 (recognizing that due to "congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability").

**B.     The Court Grants Plaintiff's Motion to Remand**

The crux of the issue before the Court is whether the RPC, in reciting that the Underlying Action was one in which Plaintiff "seeks an amount which exceeds the jurisdictional limits of lower courts in excess of seventy-five thousand dollars" (RPC), provided a sufficient basis from which Defendants could "ascertain that the case is one which is or has become removable," 28 U.S.C. § 1446(b)(3). If it was, then Defendants' removal was untimely, and the case must be remanded to New York Supreme Court. If it was not, then the case may proceed in federal court. Defendants, bearing the burden to establish removal was proper, advance three principal arguments that removal was timely, asserting that: (i) the RPC is not the type of document that falls within the scope of the removal statute; (ii) the reference to the $75,000 amount in controversy figure contained in the RPC would not have put a party on notice that the final condition for diversity jurisdiction had been met; and (iii) the inclusion of the amount in controversy within the RPC represented a bad-faith
7

attempt to defeat removal by Plaintiff, such that the 30-day timeline should be overlooked.  (*See generally* Def. Opp.).  The Court, for its own part, finds each argument unavailing, and accordingly finds that Defendants were untimely in their removal of this action.

### 1. Plaintiff's Request for Preliminary Conference Is an "Other Paper" Under 28 U.S.C. § 1446(c)(3)(A)

As a threshold challenge, Defendants argue that the RPC does not count as an "other paper" for the purposes of the removal statute, and therefore could not have triggered the removal clock under Section 1446(b).  (Def. Opp. 5-6).  In particular, Defendants assert that the document is simply a standard form that is "procedural and boilerplate," such that no "sound minded individual would look towards and expect the [RPC] form to be used as an instrument to reveal the amount of damages sought by [the] Plaintiff."  (*Id.* at 4).  Defendants' position, however, is belied by the plain text of the removal statute.

Section 1446(c)(3)(A) expressly contemplates the circumstances of this case, providing that where "the case stated by the initial pleading is not removable *solely because the amount in controversy does not exceed the amount specified in section 1332(a)*, information relating to the amount in controversy *in the record* of the State proceeding ... shall be treated as an 'other paper' under subsection (b)(3)."  28 U.S.C. § 1446(c)(3)(A) (emphases added).  In interpreting this provision, "[t]he federal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope," consistent with the federalism concerns that dictate a narrow interpretation of the removal statute.  14C CHARLES ALAN

WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE ("WRIGHT & MILLER") § 3731 (4th ed.); *see also Stan Winston Creatures, Inc.* v. *Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 179 (S.D.N.Y. 2003) ("Out of respect for the independence of state courts, and in order to control the federal docket, 'federal courts construe the removal statute narrowly, resolving any doubts against removability.'" (quoting *Somlyo* v. *J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991))); *see also Shamrock Oil & Gas Corp.*, 313 U.S. at 108-09 (observing that federalism concerns call for "the strict construction" of the removal statute).

This clear statutory directive forecloses Defendants' argument, unsupported by authority, that the "procedural and boilerplate" nature of the RPC somehow places the document outside the record of the State proceeding. (Def. Opp. 4). To the contrary, the RPC was very much an "other paper" filed "in the record of the State proceeding," given that it was a formal request from Plaintiff's counsel to Defendants' counsel, docketed on the record in the Underlying Action, for a preliminary conference. (*See* RPC). Likewise, the RPC required Defendants' attention and action, and thus constitutes a form of correspondence similar to other documents found to be an "other paper" for the purposes of the statute. *See, e.g., Moltner* v. *Starbucks Coffee Co.*, 624 F.3d 34, 37 (2d Cir. 2010) (finding letter from plaintiff to defendant stating the amount of damages sought constituted an "other paper" under the statute); *Lehman Bros. Holdings Inc.* v. *JPMorgan Chase Bank, N.A.*, 77 F. Supp. 3d 376, 378 (S.D.N.Y. 2015) (observing that it is well-established "that the reference to

9

'other paper' in [28 U.S.C. § 1446(b)] can include pre-removal correspondence between the parties" (citation omitted)).

### 2. Defendants Were on Notice of the Removability of the Action

In the alternative, Defendants maintain that they were not on notice of the removability of this action, as the RPC did not "[un]equivocally and definitively state[] the monetary damage sought." (Def. Opp. 5). Once again, however, an examination of the RPC itself reveals that the document was sufficiently clear for a reasonable litigant to ascertain the removability of the case.

To determine whether a party was on notice of the removability of an action as set forth in the removal statute, courts in the Second Circuit consider whether an objective reader, applying a "reasonable amount of intelligence," could have ascertained that a given document "affirmatively and unambiguously specifie[d] a damages amount sufficient to satisfy the federal jurisdictional minimums." *Cutrone* v. *Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 143-44 (2d Cir. 2014); *see also* 28 U.S.C. § 1446(b)(3) (providing that the 30-day timeline for removal begins upon receipt of the document "from which it may first be ascertained that the case is one which is or has become removable").

In this case, the RPC is a simple, one-page document, which states on its face Plaintiff's position that this is an "action that seeks an amount which exceeds the jurisdictional limits of lower courts in excess of seventy-five thousand dollars." (RPC 1). While "[t]he language is somewhat sly because it

10

does not use the words 'federal courts' — [and] instead [uses] the more coded reference" to the jurisdictional threshold of 28 U.S.C. § 1332(a), *Almonte* v. *Target Corp.*, 462 F. Supp. 3d 360, 367 (S.D.N.Y. 2020), the RPC nevertheless "affirmatively and unambiguously specifies a damages amount sufficient to satisfy the federal jurisdictional minimum[]" of $75,000, *Cutrone*, 749 F.3d at 144 (internal quotation marks and citation omitted). Nor was it necessary for Plaintiff to have identified the specific statutory basis for removal, given Plaintiff's clear indication of the amount in controversy. *See Reyes* v. *Hess Retail Stores*, 605 F. Supp. 3d 463, 464 n.1 (E.D.N.Y. 2022) (observing that "[t]he failure to properly cite the [diversity] statute did not deprive defendant of the knowledge that plaintiff was seeking more than $75,000" (citation omitted)). Under the "bright line rule" adopted by the Second Circuit, therefore, the removal clock started to run on June 9, 2023, when Defendants received the RPC, and closed on July 9, 2023. *Moltner*, 624 F.3d at 38 (holding that such a strict rule provides that "the removal clock does not start to run until the plaintiff serves the defendant with a paper that explicitly specifies the amount of monetary damages sought").[2]

Two corollary arguments from Defendants also miss the mark. *First*, Defendants maintain that Plaintiff's specification of the amount in controversy is ambiguous, as "[a] normal English reading of the inserted language reads

---

[2] Nor is it of any significance that Defendants themselves were not expecting the information to be conveyed in such a format, as "ample caselaw emphasizes that a court's task in determining when the § 1446(b)(3) clock started does not entail an inquiry into a defendant's subjective knowledge." *See Suttlehan* v. *MidFirst Bank*, 205 F. Supp. 3d 366, 373 (S.D.N.Y. 2016) (collecting cases).

11

that Plaintiff's counsel incorrectly assumed that the jurisdictional limit[] of the lower courts was seventy-five thousand rather than fifty thousand," as the latter amount serves as the jurisdictional limit for New York Supreme Court. (Def. Opp. 5). "[R]esolving any doubts against removability," however, the Court finds that an objective reader with a reasonable amount of intelligence would, in the first instance, assume that Plaintiff meant seventy-five thousand dollars when he specified that amount. *Purdue Pharma L.P.*, 704 F.3d at 213. In fact, by including that specific amount in controversy, Plaintiff has distinguished this case from those in which the simple allegation that the amount of damages "exceeds the jurisdictional limits of all lower Courts," without any accompanying damages amount, has been found to be insufficient to support removal. *See, e.g., Vaghela-Omanoff* v. *Ryder Truck Rental, Inc.*, No. 19 Civ. 4390 (JPO), 2019 WL 2193820, at *2 (S.D.N.Y. May 21, 2019) (finding that use of the phrase "jurisdictional limits of all lower courts," without a specific discussion of damages, was simply "a reference to the lower civil courts of New York (which may not entertain actions seeking more than $25,000)," and could not, on its own, provide a basis for removal (citing *Woodley* v. *Mass. Mut.*, No. 08 Civ. 949 (NRB), 2008 WL 2191767, at *2 (S.D.N.Y. May 23, 2008); *Wright* v. *JB Hunt Transp. Inc.*, No. 19 Civ. 2414 (PKC), 2019 WL 1936725, at *2 (E.D.N.Y. May 1, 2019))). Accordingly, by specifying the amount in controversy on its face, the RPC sufficiently established "that the damages exceeded the amount elaborated in 28 U.S.C. § 1332(a), … [and thus] explicitly specified that the damages sought met the

minimum threshold for federal jurisdiction." *Jimenez-Castro* v. *Greenwich Ins. Co.*, No. 20 Civ. 9210 (ALC), 2020 WL 7352505, at *5 (S.D.N.Y. Dec. 15, 2020); *see also Almonte*, 462 F Supp. 3d at 367 (characterizing allegations pertaining to "an amount in excess of $75,000, ... [as] a red flag reference" sufficient to put defense counsel on notice of the removability of an action).

*Second*, Defendants suggest that Plaintiff's inclusion of this information in the RPC was strategic, and that a recipient of the RPC would not have taken seriously the reference to the amount in controversy. (Def. Opp. 7). Plaintiff, for his part, disputes that the move was "in bad faith or 'gamesmanship,'" but concedes that it was a strategic choice "intended to place [Defendants] on notice [of the amount in controversy] as soon as possible to avoid further delay." (Pl. Reply 4 (further representing that "[P]laintiff added the amount in controversy statement in the first legal document that was created after [D]efendants' last failed attempt to remove")). Regardless of the ultimate rationale behind Plaintiff's actions, "there is nothing wrong with [such] strategy," as "'[t]here is nothing improper in taking account of the tactical and strategic considerations' in choosing a forum." *Reyes*, 605 F. Supp. 3d at 467 (quoting WRIGHT & MILLER § 3637). Indeed, Defendants have already attempted to remove this action once, and were thus aware that the only remaining impediment to removal was the identification of an amount sufficient to "demonstrat[e] that the amount in controversy requirement has been met." *Walker*, 2023 WL 3766311, at *1. That Defendants were planning on removing the case in response to their "Demand for a Statement of Damages pursuant to

13

C.P.L.R. § 3017(c)," does not change the fact that Plaintiff had already properly started the clock with the service of the RPC. (Def. Opp. 6). *See Reyes*, 605 F. Supp. 3d at 464, 467 (granting motion to remand and finding that plaintiff's strategic reference to the federal diversity statute did not excuse defendant's own decision to "wait[] until it had received a response to its demand for a bill of particulars" before removing the case).

Ultimately, neither party's strategic considerations bear on the Court's interpretation of the plain text of the removal statute, or the Court's concomitant obligation to strictly construe the statute's requirements against removal. *See Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 395 (S.D.N.Y. 2006) ("It is axiomatic that removal statutes are to be strictly construed against removal." (internal quotation marks and citation omitted)). Accordingly, the Court finds that the timeline for removal started on June 9, 2023, when Plaintiff served the RPC, and therefore Defendants' removal of this action on September 6, 2023, was untimely under 28 U.S.C. § 1446(b)(1).

### 3. The Bad-Faith Exception of 28 U.S.C. § 1446(c) Does Not Apply to the 30-Day Removal Clock

As a final argument, Defendants maintain that remand is inappropriate because Plaintiff has "engaged in strategic gamesmanship to prevent [Defendants'] removal from state court." (Def. Opp. 7 (quoting *Iqbal v. Normandin Transit, Inc.*, No. 15 Civ. 746 (RJA), 2016 WL 3563218, at *1 (W.D.N.Y. July 1, 2016))). While these arguments may have merit when directed to the one-year limit for removal under 28 U.S.C. § 1446(c), which contains an express bad-faith exception, they are misplaced with respect to the

30-day timeline set forth in 28 U.S.C. § 1446(b)(1), which does not. Indeed, such a conclusion flows logically from the text of the removal statute itself.

Section 1446(b)(1) establishes the general requirements for removal, providing that:

> The notice of removal of a civil proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1). Nowhere in this provision is there any indication that the 30-day timeline should be read in a qualified manner, or that the Court must conduct any inquiry into the circumstances surrounding the timeliness of the notice of removal. Instead, the bad-faith requirement is contained later in the statute in Section 1446(c)(1), which sets forth additional requirements for removal based on diversity of citizenship:

> A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, *unless the district court finds that the plaintiff has acted in bad faith* in order to prevent a defendant from removing the action.

*Id.* § 1446(c)(1) (emphasis added).

Read together, the statutory subsections indicate Congress's intent to provide an exception to the one-year removal period set forth in Section 1446(c), but no analogous exception for the 30-day timeline contained in

15

Section 1446(b).  *See Aroostook Cnty. Fed. Sav. & Loan* v. *Marrett*, No. 23 Civ. 6 (JAW), 2023 WL 2868144, at *3 (D. Me. Apr. 10, 2023) (finding that, "[o]n its face, the bad faith provision of § 1446(c)(1) does not apply" to excuse a failure to abide by the 30-day timeline of § 1446(b)(1)); *accord Erlenbaugh* v. *United States*, 409 U.S. 239, 244 (1972) (discussing "the principle that individual sections of a single statute should be construed together" (collecting cases)); *In re Hawker Beechcraft, Inc.,* 515 B.R. 416, 430 (S.D.N.Y. 2014) ("[A]djacent statutory subsections that refer to the same subject matter should be read harmoniously." (internal quotation marks and citation omitted)).  Reconciling both provisions evinces Congress's intent to account for bad-faith gamesmanship with respect to the one-year limitation for the removal of cases, but to maintain the general requirement that a removing party act promptly within 30 days of becoming aware of the basis for removal.  This interpretation of the text is further confirmed by the legislative history, which establishes that the "'bad faith' exception to the one-year limit on removal of diversity cases [was] … enacted as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011," and reflected Congress's "intent … to clarify ambiguity in the case law concerning whether the one-year limitation in § 1446(c)(1) was jurisdictional or procedural."  *Ehrenreich* v. *Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014) (citing *Federal Courts Jurisdiction and Venue Clarification Act of 2011*, Pub. L. No. 112-63, 125 Stat. 758 (2011); H.R. Rep. No. 112-10 at 15).  Accordingly, the Court finds that the text of the

16

removal statute forecloses Defendants' allegation of bad faith on the part of Plaintiff as a potential excuse for Defendants' otherwise untimely removal.

## CONCLUSION

For the reasons detailed above, Plaintiff's motion for remand is GRANTED. The Clerk of Court is directed to terminate the pending motion at docket entry 5, and to remand this action to New York Supreme Court for further proceedings.

SO ORDERED.

Dated:   July 8, 2024
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge